Edmund Lewicki v. Commissioner.
Lewicki v. Commissioner
Docket No. 4511-69.
United States Tax Court
T.C. Memo 1970-225; 1970 Tax Ct. Memo LEXIS 135; 29 T.C.M. (CCH) 976; T.C.M. (RIA) 70225; August 3, 1970, Filed. *135 Edmund Lewicki, pro se, 2628 N. St. Louis Ave., Chicago, Ill.James F. Hanley, Jr., for the respondent. 977 SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes for the calendar years 1966 and 1967 in the respective amounts of $920.21 and $863.36. One of the issues raised by the pleadings has been disposed of by agreement of the parties, leaving for our decision the issue of whether petitioner is entitled to a deduction of $4,278.28 in the calendar year 1966 and $4,000 in the calendar year 1967 as a theft loss arising from the theft of United States savings bonds. Findings of Fact Petitioner, an individual who resided in Chicago, Illinois at the time of the filing of the petition in this case, filed his Federal income tax returns for the calendar years 1966 and 1967 with the district director of internal revenue in Chicago, Illinois. During the years 1942 through 1945 petitioner was in the United States Army. Beginning in June 1942 he provided for a cash allotment of $40 a month to be paid to his mother, Mary Lewicki. In addition he provided for a monthly allotment of $2.50 toward the *136 purchase of United States savings bonds in $25 denominations. Shortly after he made the allotments, he was transferred to the Aleutian Islands. While he had been in the United States, he had written to his mother in Polish which was the only language she was able to read. After he was transferred to the Aleutian Islands, he was not permitted to write in Polish because of the necessity for censoring letters of servicemen stationed in the Aleutian Islands. In June of 1944 he was requested to change his allotment from a cash allotment to an allotment for the purchase of savings bonds. In June 1944 he did make this change and made an allotment of $37.50 per month for the purchase of a $50 United States savings bond each month which was to be registered in his name, payable on death to his mother, and sent to his mother. Petitioner returned to the United States in 1945. On March 14, 1946, petitioner went with his mother to the Logan Square Branch of the Post Office in Chicago. He saw his mother obtain from the Post Office documents which he believed to be 25 United States savings bonds of $100 denomination. After his mother had obtained the documents at the Post Office, he went with *137 her to the Pioneer Trust and Savings Bank in Chicago, Illinois, and saw her turn in the documents and receive $2,050. At that time she gave him $2,000 which he deposited in a bank in Warsaw, Wisconsin and his mother kept the $50. Sometime in 1946 petitioner saw in his mother's possession what he believed to be hundreds of United States Series E savings bonds, some of which were made out in his name, payable on death to his mother, some of which were made out in his mother's name, and some of which were made out in the name of his brother, Sigmund Lewicki. After petitioner had seen what he believed to be these Series E savings bonds in his mother's possession in 1946, his mother remarried. After her remarriage she moved to Florida to live and in 1956, while living in Florida, she died. The estate of petitioner's mother was probated in Florida and all that was listed in her estate was approximately $500 in a bank account. Shortly after his mother's death, petitioner began to inquire with respect to savings bonds which his mother might have had. He discussed these savings bonds with his brother, Sigmund, who he believed had the bonds, but was unable to get any bonds from Sigmund. *138 In August 1957 petitioner wrote to the office of the Bureau of Public Debts in Chicago, Illinois asking for an investigation into savings bonds issued in his name, the name of his brother, Sigmund, and the name of his mother, Mary. Petitioner was supplied with a list of all bonds shown by the records of the Bureau of Public Debt of the Treasury Department as issued in these three names or in combinations thereof. One of these bonds was issued in July 1941 and was registered in the name of "Mrs. Mary Lewicki." That bond was cashed and payment made under date of December 10, 1943, the name of the payee shown on the records of the Bureau of Public Debt being "Mrs. Mary Lewicki." The balance of the bonds which were located by the Bureau of Public Debt were issued during 1942 through 1945. Thirteen bonds issued on various dates in 1942 and 1943, registered in the name of "Sigmund [or "Sigmund R."] Lewicki or Mrs. Mary Lewicki" were cashed on April 15, 1950, the name of the payee of these bonds being "Sigmund Lewicki" or "Sigmund R. Lewicki." Four bonds issued in February 1942 registered in the name of "Mrs. Mary Lewicki" were cashed and payment made 978 on December 10, 1943, the *139 name of the payee being "Mrs. Mary Lewicki." Sixteen bonds registered in the name, "Mrs. Mary Lewicki or Sigmund Lewicki" were cashed on April 23, 1946, with the name of the payee being "Mrs. Mary Lewicki." Five bonds registered in the name of "Mrs. Mary Lewicki or Sigmund Lewicki" were cashed on May 18, 1955 with the name of the payee being "Mrs. Mary Lewicki." The records furnished to petitioner also showed eight bonds registered in the name of "Edmund Lewicki POD to Mrs. Mary Lewicki" issued during the period January 1943 to January 1945 which were cashed at various times from November 30, 1944, through April 28, 1945, the payee being "Edmund Lewicki." The records of the Bureau of Public Debt show no bonds purchased by or registered in the name of Sigmund Lewicki, Mary Lewicki, or Edmund Lewicki or any combination thereof other than the bonds shown on the records furnished to petitioner. Edmund Lewicki did cash and receive payment on the bonds which the records of the Bureau of Public Debt show were cashed by him. Beginning in 1957 petitioner discussed with various people bringing a suit against his brother, Sigmund, for embezzlement or misappropriation of United States savings *140 bonds registered in his name, payable on death to his mother. He never brought such suit because he was advised, and he himself was also of the opinion, that he would be unable to prove what he believed to be a fact, that bonds which had been purchased by his mother and registered in his name were taken by his brother, Sigmund. The Army payroll records of Edmund Lewicki show amounts withheld as allotments for purchase of bonds which coincide with the amount of bonds issued in the name of "Edmund Lewicki POD to Mrs. Mary Lewicki." In 1964 petitioner concluded that since he was unable to obtain the bonds he believed his mother had purchased, he should recover the value of these bonds by deduction on his income tax return. Therefore, beginning in 1964 and continuing through the years 1965, 1966, and 1967 petitioner, after determining his income and the amount of his other deductions and his personal exemptions, deducted enough as loss on bonds to owe no tax. In the year 1966 the amount which he deducted as "Bad debts arising from stolen U.S. Savings Bonds" was $4,278.28. In 1967 he deducted $4,000 as "Bad debts arising from Purchase of U.S. Savings Bonds." Respondent in his notice *141 of deficiency disallowed the claimed deduction in each year with the explanation that petitioner had failed to verify the existence or loss of the bonds. Opinion The issue here is purely factual. We do not doubt that when petitioner's mother gave him the $2,000 in March 1946, petitioner thought the documents she cashed to obtain the money were United States Series E savings bonds. However, not only the fact that the Bureau of Public Debt has no record of bonds cashed by petitioner's mother, Mary Lewicki, on March 14, 1946, but also the fact that petitioner says his mother got the documents which she cashed from the Post Office leads to the conclusion that petitioner was mistaken as to the source of the $2,000. This conclusion is further supported by petitioner's statement that he thought certain United States savings bonds came in two parts and not merely a front and back of one sheet of paper. In any event it is not petitioner's contention that his loss resulted from the bonds he believed his mother cashed on March 14, 1946. He merely argues that because these bonds do not show on the records of the Bureau of Public Debt there may be other bonds purchased by his mother that *142 do not show on the records of the Bureau of Public Debt. Also, petitioner may have seen in 1946 some of the Series E savings bonds which his mother had which were later cashed, but none of these bonds was registered in his name. Petitioner agrees that the signature on the bonds which he cashed and of which he was the payee is his signature and that he did cash these bonds and receive the funds. The evidence which petitioner produced at the trial is not sufficient to show that petitioner's mother had any bonds made out in his name or payable to him on death which were stolen or in any way misappropriated by anyone. The evidence does not show the face value of the bonds, if any, which petitioner saw in 1946. Finally, petitioner has failed to show any theft of any bonds in either of the years here in issue or in any other year. However, even under petitioner's own 979 beliefs the theft would have occurred many years earlier than the years here in issue. On the basis of this record we sustain respondent's disallowance of the deductions claimed by petitioner for loss by theft of United States savings bond. Because of the issue which has been disposed of by agreement of the parties, *143 Decision will be entered under Rule 50.